IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

ROBIN L. CRAWFORD              )
                              )    Case No: 1:07-CV-51
v.                            )    MATTICE/CARTER
                              )
MICHAEL J. ASTRUE,            )
        Commissioner of Social Security    )

REPORT AND RECOMMENDATION

This action was instituted pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking

judicial review of the final decision of the Commissioner denying the plaintiff a period of

disability, disability insurance benefits, and supplemental security income under Title II and Title

XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 423, and 1382.  This matter was referred to

the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil

Procedure for a Report and Recommendation regarding the disposition of the plaintiff's Motion

for Judgment on the Pleadings (Doc. 18) and defendant's Motion for Summary Judgment (Doc.

22).

    For the reasons stated herein, I RECOMMEND the decision of the Commissioner be

AFFIRMED insofar as it denies Plaintiff a period of disability and disability insurance benefits

under Title II, however,  I RECOMMEND the decision of the Commissioner be REVERSED

and REMANDED under Sentence Four of 42 U.S.C. § 405(g), for further proceedings consistent

with this Report and Recommendation, as to Plaintiffs request for Supplemental Security Income

benefits under Title XVI.

## Administrative Proceedings

The Plaintiff alleges disability beginning on April 7, 1998 (Tr. 80). He is insured for Title II Social Security disability benefits through December 31, 1998 (Tr. 14). Therefore, he must establish that his disability began on or before that date to be awarded Title II Social Security Disability Insurance Benefits (DIB). Supplemental Security Income (SSI) benefits are not based on a claimant's earnings record and can be established at any time.

On May 24, 2004, over four years after his date of last insured, the Plaintiff filed for DIB and SSI (Tr. 80-83 and 449-451). His claim was denied on December 16, 2004 (Tr. 66-69). The Plaintiff then filed a Request for Reconsideration on December 21, 2004 (Tr. 70). His Request for Reconsideration was denied on March 9, 2005 (Tr. 71-74). The Plaintiff then filed a Request for Hearing by an Administrative Law Judge. Administrative Law Judge (ALJ) Michael Swan held a hearing on June 6, 2006 (Transcript at Tr. 32-61). The Plaintiff was represented by former counsel Nora McCarthy. Based on the evidence of record, ALJ Swan issued a denial on June 30, 2006. ALJ Swan determined that the Plaintiff was unable to return to any of his past jobs, but was capable of returning to other jobs that existed in significant numbers in the national economy (Tr. 10-22). On August 8, 2006, the Plaintiff filed a Request for Review of Hearing Decision/Order with the Social Security Appeals Counsel (Tr. 8). On December 19, 2006, the Appeals Council denied review of the Plaintiff's claim (Tr. 3-5).

## Standard of Review - Findings of the ALJ

Disability is defined as the inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §423(d)(1)(A). The burden

of proof in a claim for Social Security benefits is upon the claimant to show disability. *Barnes v. Secretary, Health and Human Servs.*, 743 F.2d 448, 449 (6th Cir. 1984); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980); *Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978). Once, however, the plaintiff makes a prima facie case that he/she cannot return to his/her former occupation, the burden shifts to the Commissioner to show that there is work in the national economy which he/she can perform considering his/her age, education and work experience. *Richardson v. Secretary, Health and Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 28 L. Ed. 2d 842, 92 S. Ct. 1420 (1971); *Landsaw v. Secretary, Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings they must be affirmed. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Secretary, Health and Human Servs.*, 790 F.2d 450 n. 4 (6th Cir. 1986).

After consideration of the entire record, the ALJ made the following findings:

1.  The claimant met the insured status requirements of the Social Security Act through December 31, 1998.

2.  The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 CFR 404.1520(b), 404.1571 *et seq*., 416.920(b) and 416.971 *et seq*.).

3.  The claimant has the following severe impairments: status post L4/S1 fusion and hardware removal, pseudoarthrosis, failed back syndrome, degenerative disc disease of the lumber spine, depression and personality disorder (not otherwise specified) (20 CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, I find the claimant has the residual functional capacity to perform light work, modified as follows: he must be allowed to alternate sit/stand position, he must avoid exposure to hazards, and he can perform posturals frequently but cannot climb ladders/ropes/scaffolds. Further, I find he is limited to unskilled work requiring the performance of only simple tasks with normal supervision in a solitary or small group setting. Additionally, I find the claimant is limited to performing tasks dealing more with objects than people.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on October 28, 1960 and is 45-years old, which is defined as a younger individual 45-49 (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school equivalency education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11. The claimant has not been under a "disability," as defined in the Social Security Act, from April 7, 1998 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 14-22).

## Issues Presented

Plaintiff asserts the ALJ erred in the weight given medical sources, particularly in not accepting the opinions of Dr. Hodges. Plaintiff's Brief at 7-14. I will analyze the facts and law to determine if there is substantial evidence to support the conclusion of the ALJ that plaintiff was not under a "disability," as defined in the Social Security Act, at any time through the date of the decision.

## Relevant Facts

Plaintiff was forty-six years old on the date of the ALJ's decision with a high school education through a GED (Tr. 51). He had past work experience as a construction laborer, classified by the vocational expert as unskilled work at the heavy exertional level (Tr. 54). The ALJ found that Plaintiff could not return to his past relevant work (Tr. 20).

Plaintiff testified that he had his first back surgery in April 1998 (Tr. 39). Then, seven months later, he had another surgery to remove the hardware from the first surgery (Tr. 40). He received relief from that surgery only when he was taking medication (Tr. 40). Plaintiff explained that his pain management doctors prescribed three medications that "got the pain under

control" (Tr. 41). He explained that he "was fine" until he "relaxed" and then the pain returned (Tr. 42). He did not take medication at that time because he could not afford it (Tr. 50). He testified that he felt he was disabled due to depression and had attempted suicide in May 2004 (Tr. 46-47). He did not like to be around others (Tr. 47).

When questioned about some of the statements in the medical records, Plaintiff denied that he ever made such statements. He denied telling the doctor in February 2000 that he was working construction twenty-to-forty hours a week (Tr. 38). He denied telling the doctor in May 2000 that he was working construction (Tr. 37-38). Plaintiff explained that Dr. Hodges, who reported that he was doing better after surgery, was not correct (Tr. 40-41). Plaintiff explained that Dr. Hodges disagreed with him when he said he was not better because Dr. Hodges kept telling him that he was "supposed to be doing better" (Tr. 41). Plaintiff testified that Dr. Hodges' treatment note was "incorrect" when, in January 1999, Dr. Hodges reported that Plaintiff did not need pain medication (Tr. 41). When questioned about his drug use, Plaintiff first said that he had not used drugs for fifteen years and then changed his testimony to reflect that he had last used "meth" about three years prior to the hearing (Tr. 45). When the ALJ noted that a doctor reported that Plaintiff had used meth in October 2004, which was only a year-and-a-half prior to the hearing, Plaintiff replied that he did not know if that report was correct (Tr. 45). Plaintiff testified that he could sit for about thirty minutes before he needed to get up and move around (Tr. 50). If the surface was not concrete, he could walk about thirty minutes at a time (Tr. 50). He spent his days "just laying around" (Tr. 52). He was living in his truck (Tr. 53). He could follow instructions well (Tr. 53). He could not stay focused for two hours at a time (Tr.

53). He was not very good around others (Tr. 53-54). He alleged disability beginning April 7, 1998 (Tr. 80).

Medical evidence prior to Plaintiff's date of last insured, December 31, 1998:

Plaintiff was treated for low back pain and Scott Hodges, M.D. recommended back surgery, which was performed on April 15, 1998 (Tr. 433-47). Plaintiff obtained initial relief but the surgical hardware bothered him so, in November 1998, Dr. Hodges removed the hardware (Tr. 210-44). At discharge, Dr. Hodges noted that Plaintiff was "quickly" independent and was ambulatory (Tr. 210-11). His motor strength was intact (Tr. 211). Dr. Hodges continued to treat Plaintiff for about a year after the surgeries (Tr. 430-38). Plaintiff saw James J. O'Connell, III, M.D. on two occasions prior to his date of last insured. A treatment note of November 22, 1999 indicates Plaintiff had back problems and signs of depression. He had low back pain (Tr. 127). On December 10, 1999, Dr. O'Connell reported Plaintiff's back was not much better. He referred Plaintiff to Dr. Najar for pain management (Tr. 126).

Medical evidence after Plaintiff's date of last insured, December 31, 1998:

In February 2000, Plaintiff saw Michael F. Najjar, M.D. (Tr. 421-22). Plaintiff reported that he continued to "work part time construction, 20-40 hours per week" (Tr. 421). Plaintiff reported that his pain was constant but he took no medication on a regular basis (Tr. 421). Dr. Najjar diagnosed persistent lumbar radiculopathy and myofascial pain (Tr. 422). He prescribed a steroid injection and medication (Tr. 422).

Plaintiff again saw James J. O'Connell, III, M.D. on June 16, 2000 and up until March 2004 (Tr. 117-27). At the June 16th visit he complained of continued lower back pain (Tr. 125). Plaintiff's gait was "halting" and he could not get up from a chair with ease (Tr. 125). He could

not extend his lower legs into a fully extended position without pain and he was unable to stand on his tip toes or rock on his heels (Tr. 125). Dr. O'Connell assessed low back strain and pain and treated him with medication (Tr. 125). The next treatment note from Dr. O'Connell was dated September 2002, when Plaintiff returned after he hurt his right shoulder (Tr. 119-23). Plaintiff did not return to Dr. O'Connell until March 2004 when he complained of lower back pain, loss of hearing in his right ear, and dizziness (Tr. 117).

In July 2001, Plaintiff saw Charles Steven Clifton, a physician's assistant in the office of Thomas P. Miller, M.D. (Tr. 409-10). Plaintiff reported that he worked daily in construction, took care of his family's needs, performed household chores, and worked around the yard (Tr. 409). Plaintiff complained of a "new pain" in his mid-back and neck and thought that it might be due to his "increased work" because he was "a construction worker" (Tr. 409). In December 2001, Dr. Miller administered a series of steroid injections for Plaintiff's back pain (Tr. 400, 413).

In June 2004, Plaintiff went to the emergency room for treatment of back pain (Tr. 306-08). Lumbar x-rays revealed Plaintiff's back surgery (Tr. 307). The lumbar vertebral bodies were normal in height with disc space heights preserved and no acute compression was noted (Tr. 307). In September 2004, Plaintiff saw Tin Oo, M.D., with complaints of back pain (Tr. 205-09, 250-70).

In November 2004, Plaintiff saw Emelito Pinga, M.D., at the request of the state agency (Tr. 188-90). On examination, Plaintiff had no trouble getting out of the chair and onto the examining table (Tr. 189). His neurological examination was normal (Tr. 189). He had normal straight and tandem walk (Tr. 189). Lumbar spine x-rays revealed Plaintiff's earlier surgery with

presumed resorption of bone mass on the left and incomplete fusion on the right with intervertebral disc space narrowing at L4-L5 (Tr. 191). "No acute abnormality [was] seen" (Tr. 191). Dr. Pinga's impression was degenerative arthritis and degenerative disc disease of the lumbar spine (Tr. 190). Dr. Pinga does not discuss in her report either the disc space narrowing at L4-L5 or the incomplete fusion, both of which are noted in the x-ray report. Dr. Pinga opined that Plaintiff could sit for six hours in an eight-hour day; walk or stand for four hours in an eight-hour day; frequently lift ten pounds; and occasionally lift fifteen pounds (Tr. 190).

In December 2004, James N. Moore, M.D., reviewed Plaintiff's records for the state agency (Tr. 196-203). Dr. Moore opined that Plaintiff remained capable of performing work at the light exertional level (Tr. 197).

In May 2005, Dr. Oo ordered lumbar x-rays, which revealed post-surgical changes of the lower lumbar spine with associated degenerative changes (Tr. 249). There were no other significant findings (Tr. 249). In June 2005, Plaintiff returned to Dr. Hodges (Tr. 280-82). On examination, there were no muscle spasms (Tr. 281). Muscle tone was normal (Tr. 281). Sitting straight leg raising test was positive on the left but supine straight leg raising test was negative bilaterally (Tr. 281). Plaintiff was able to heel walk and toe walk bilaterally (Tr. 281). Deep tendon reflexes were symmetrical and normal (Tr. 281). There was reduced range of lumbar motion (Tr. 281). Plaintiff underwent a lumbar MRI scan which revealed the spinal fusion and hardware removal (Tr. 280-82). Dr. Hodges assessed status post-fusion with removal of hardware and "rule out" stenosis (Tr. 279). Plaintiff returned to Dr. Hodges in July 2005 with complaints of lower back pain (Tr. 278-79). A lumbar myelogram in July 2005 revealed mild spinal stenosis at L3-4, secondary to a posterior disc bulge and no nerve root compression or

instability of the lumbar spine (Tr. 271-72). A lumbar CT scan revealed mild and moderate stenosis (Tr. 273-74). Dr. Hodges assessed status post fusion and removal of hardware and "pseudoarthrosis" (Tr. 279). In August 2005, Plaintiff explained that pain control was only possible when he took two Lortabs instead of one (Tr. 276). Most of these reports were signed by Donna Pearson, Dr. Hodges' physician assistant (Tr. 276).

In September 2005, Plaintiff went to the emergency room for treatment of back pain (Tr. 287-97, 332-60). He returned to the emergency room four times in October 2005 (Tr. 287-98, 332-60, 343, 345).

In October 2005, Dr. Hodges completed a form in which he opined that Plaintiff could only lift five pounds occasionally and no weight frequently (Tr. 283). He could only stand or walk for thirty minutes to an hour in an eight-hour workday and could only sit for a maximum of forty-five minutes to two hours in an eight-hour workday (Tr. 283-84).

In November 2005, Plaintiff went to the emergency room for treatment of back pain (Tr. 299-308). He was given an injection (Tr. 303).

In January 2006, Plaintiff was hospitalized overnight for treatment of chest pain (Tr. 309-31). The doctor noted that Plaintiff had stopped taking Lortab when he lost his Tenncare benefits and took no other medication (Tr. 311). Testing revealed a normal heart (Tr. 319). He was discharged home with a diagnosis of chest wall pain and advised to continue taking Lortab (Tr. 309). In March 2006, Plaintiff returned to the emergency room for treatment of back pain (Tr. 287-97, 362-66).

<u>Hearing testimony of the vocational expert:</u>

Rodney Caldwell testified as a vocational expert (VE) (Tr. 54-60). The ALJ posed a hypothetical question to the VE, asking him to assume an individual of Plaintiff's age, education, and past work history (Tr. 54). This individual could perform work at the light exertional level but limited to frequent (as opposed to constant) climbing, balancing, stooping, kneeling, crouching, crawling and could never climb ladders, ropes, and scaffolds (Tr. 55). He needed to avoid all hazards (Tr. 55). He needed a sit/stand option (Tr. 55). He could perform simple tasks with normal supervision and would do best in a small group or solitary work setting (Tr. 55). The VE explained that these restrictions would reduce the world of light work by about sixty percent (Tr. 55). The VE identified light jobs such as assembly work (150,000 national jobs); hand packer work (140,000 national jobs); and production inspector (200,000 national jobs) (Tr. 56). These were just representative jobs (Tr. 56). At sedentary, this individual could perform assembly work (80,000 national jobs); and production inspector (42,000 national jobs) (Tr. 57-58). The VE testified that, other than the sit/stand option, his testimony was consistent with the Dictionary of Occupational Titles (DOT) because the DOT does not address the sit/stand option (Tr. 57).

<u>Analysis</u>

In order for Plaintiff to be entitled to Disability Insurance Benefits, he must prove that he was disabled prior to the expiration of his insured status, December 31, 1998 (Tr. 12). *See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990). Plaintiff argues the ALJ erred in not accepting the opinion of Dr. Hodges, his treating physician, who issued restrictions inconsistent with the ability to work. Plaintiff's Brief at 7-14, referring to Tr. 283-86. Although Plaintiff mentions his

history of depression, he does not specifically raise this issue and has thus waived the argument.

*See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (issue

waived if not raised). In any event, the ALJ's conclusions as they relate to Plaintiff's depression

appear to be supported by the record.  The ALJ addressed the issue of Plaintiff's depression as

follows:

> "Regarding complaints of depression, as noted above, the medical record reveals a self-inflicted gunshot wound and treatment for an "adjustment disorder" from May 31, 2004 to June 2, 2004 (Exhibit 13F). Reported stressors included "finances, break up with a girlfriend and disability." On August 30, 2004, a psychiatrist with Fortwood Center, Inc., prescribed an antidepressant but on October 14, 2004 it was noted the claimant had not been compliant with medications (Exhibit 5F). Additionally, on October 14, 2004, the claimant denied drug use but when confronted with test results, he admitted using cannabis and methamphetamines (Exhibit 5F).
>
> Dr. Won B. Park, a psychiatrist, treated the claimant on 4-occasions from September 9, 2004 to December 2004; however, the claimant failed to show for his January 6, 2005 appointment and I find no evidence of further follow-up (Exhibit 9F).
>
> At the request of the Social Security Administration, the claimant was seen for a consultative psychological evaluation on October 11, 2004, performed by Dr. Carol Phillips, a licensed psychologist (Exhibit 4F). The claimant reported a history of being homeless for two years, a report inconsistent with references in the medical record that he resided with his mother (for example, see treatment record, dated June 8, 2004, at Exhibit 5F). Dr. Phillips noted reports of depression but the claimant denied suicidal ideations and his activities of daily living included caring for his personal needs independently, visiting family and friends, and watching television. The mental status examination showed the claimant's thoughts were intact, he was able to maintain concentration, and his mood was described as only mildly blunted. The claimant denied drug use "historically or currently," again, a fact contradicted by other disclosures in the medical record and contradicted by his testimony. Dr. Phillips assessed major depression but concluded the claimant's ability to understand and recall simple work functions was not impaired, his ability to concentrate and be persistent for work tasks was only "mildly to moderately" impaired, social interactive patterns were moderately impaired and the claimant's ability to adapt to changes was considered only "mildly to moderately" impaired.

State agency mental health consultants reviewed the medical file and concluded there was evidence of an affective disorder and personality disorder but opined the claimant was only moderately limited in his activities of daily living, maintaining social functioning, and maintaining concentration/persistence/pace. Specifically, it was concluded the claimant could perform simple and occasional moderately detailed tasks with normal supervision, and would probably do best in small groups or solitary work settings with tasks dealing more with objects than people (Exhibits 6F and 7F). I find this opinion evidence well supported by the documented mental-health record before me and entitled to considerable weight.

Tr. 18-19.
.

I conclude the analysis of the ALJ as to the issue of his depression is supported by substantial evidence found in the record and that Plaintiff was not disabled at any time by virtue of his depression.

The October 10, 2005 assessment of Plaintiff's treating physician, Dr. Hodges, restricts lifting to less than 5 pounds because of chronic pain. Dr. Hodges' form indicates absences or unplanned departures from the workplace would be caused by pseudoarthritis (Tr. 283-286). If that treating physician assessment had been accepted as controlling by the ALJ, Plaintiff would have been found disabled as of the date of that opinion and thus entitled to SSI benefits.

The treating physician rule which gives greater and sometimes controlling weight to the treating physician is based on the assumption that a medical professional who has dealt with a claimant over a long period of time has a deeper insight into the claimant's condition than one who has examined a claimant but once or simply reviewed the medical evidence. *See Barker v. Shalala*, 40 F.3d 789 (6th Cir. 1994). However, the ALJ is not required to accept any medical opinion, even that of a treating physician, if that opinion is not supported by sufficient clinical findings. See 20 C.F.R. § 404.1527(d)(3); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993) ("This court has consistently stated that the [Commissioner] is not bound by

the treating physician's opinions, and that such opinions receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence.").

The ALJ gave several reasons for rejecting Dr. Hodges' opinion: (1) the opinion was not supported by his own treatment notes or the objective MRI test results (Tr. 16), (2) Dr. Hodges' opinion was inconsistent with the November 3, 2004 consultative examination findings and opinion of Dr. Emelito Pinga and (3) inconsistent with the opinion and assessment of the non-examining state agency physician, Dr. James Moore, and (4) inconsistent with Mr. Crawford's activities of daily living (Tr. 16-18). The ALJ found the opinion of the state agency medical expert well supported and assigned it considerable weight in his residual functional capacity analysis (Tr. 18). The Commissioner argues Dr. Hodges' opinion was not supported by the medical record and it was inconsistent with the rest of the record evidence.

In considering whether Plaintiff has shown he was disabled prior to his date of last insured, December 31, 1998, the record shows that shortly after Plaintiff's back surgery in April 1998, he was "quickly" independent and was ambulatory (Tr. 210-11). In February 2000, Mr. Crawford reported to Dr. Najjar that he took no medication on a regular basis (Tr. 421). At that point, he started taking medications and steroid injections (Tr. 422). During the time that Dr. O'Connell treated Mr. Crawford (November 1999 to March 2004), Mr. Crawford had long periods of time when he did not even see Dr. O'Connell (Tr. 117-27). He saw the doctor in June 2000, then waited two years and saw Dr. O'Connell in September 2002, and then waited another two years before he returned in March 2004 (Tr. 117-27). In November 2004, Dr. Pinga noted nothing more than degenerative changes (Tr. 190). In June 2005, Dr. Hodges noted no muscle spasms; normal muscle tone; negative bilateral supine straight leg raising; symmetrical and

normal deep tendon reflexes; and observed that Mr. Crawford was able to heel walk and toe walk bilaterally (Tr. 281).

Objective test results were normal or near-normal. For example, in June 2004, lumbar x-rays revealed that the lumbar vertebral bodies were normal in height with disc space heights preserved and no acute compression noted (Tr. 307). In May 2005, lumbar x-rays revealed only degenerative changes and no other significant findings (Tr. 249). A June 2005 lumbar MRI scan revealed nothing more serious than the evidence of prior surgery (Tr. 280-82). A lumbar myelogram in July 2005 revealed only mild spinal stenosis and no nerve root compression (Tr. 171-72). A lumbar CT scan revealed mild and moderate stenosis (Tr. 273-74).

As the ALJ noted, Mr. Crawford told Dr. Najjar that he was working construction in February 2000 (Tr. 421). In July 2001, Mr. Crawford told a physician's assistant in Dr. Miller's office that he was working daily in construction, took care of his family's needs, performed household chores, and worked around the yard (Tr. 409).

On the basis of the record as a whole, I conclude the decision of the ALJ is amply supported insofar as it finds Plaintiff to not be disabled as of his date of last insured. Taking into account the reports of his daily activities and the medical record as it existed at or even near the date of last insured, there is no evidence to restrict plaintiff further than the light level found by the ALJ.

However, I am not satisfied that the opinion of the ALJ is supported by substantial evidence as it relates to the Plaintiff's condition as of October 2005, the date of the disabling assessment of Dr. Hodges. The ALJ explained he accepted the opinions of Dr. Moore, the state

agency reviewing physician, who opined that Mr. Crawford retained the ability to perform light work (Tr. 18, 197). Courts have recognized that an ALJ may adopt the opinion of a reviewing physician, including a state agency physician, over a treating physician's opinion, as long as the ALJ considers both opinions. *See Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 651 (6th Cir. 2006). An ALJ is in some circumstances entitled to rely on a state agency medical consultant. *See* 20 C.F.R. § 404.1527(f)(2)(i) ("State agency medical and psychological consultants . . . are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation"). However, in this case I am persuaded by the argument of Plaintiff's counsel that neither the opinion of Dr. Pinga nor Dr. Moore provide substantial evidence to support the rejection of the treating physician's disabling assessment.

On November 30, 2004, the Plaintiff was seen by Dr. Emelito Pinga at the request of the Defendant. Dr. Pinga interviewed the Plaintiff, took the Plaintiff's vitals, described the Plaintiff's appearance, and performed a basic physical examination, which included range of motion testing, reflexes and station and gait testing (Tr. 188-189). Plaintiff argues there is no indication that Dr. Pinga reviewed a single treatment record or test result. X-rays were performed at the consultative examination, but Plaintiff argues it is clear from Dr. Pinga's report that he did not even review x-rays taken on that day before he made his report and provided an opinion. Further, Dr. Pinga's impression included post-surgical changes at L5-S1 and S2-S3 (Tr. 190). However, it is clear from the record that the Plaintiff's surgery was at the L4-5, L5-S1 levels (*See* Tr. 433). Thus, Dr. Pinga did not correctly identify the levels of the Plaintiff's surgery. This supports Plaintiff's argument that Dr. Pinga never reviewed any of the Plaintiff's medical records. Moreover, the x-rays taken on that day (interpreted by Dr. Glenn Strome and

signed by Dr. James Lloyd) revealed post surgical changes at L4-5 and an incomplete fusion at L4-5 (Tr. 191). Dr. Pinga does not mention the incomplete fusion which Plaintiff argues is significant and was potentially the basis of the disabling assessment of the treating physician. His report never mentions any abnormalities at the L4-5 level, and never mentions an incomplete fusion.

The ALJ rejects Dr. Hodges' opinion in part because the opinion is inconsistent with Dr. Pinga's findings. Plaintiff argues Dr. Pinga never reviewed the Plaintiff's medical records, apparently never reviewed x-rays taken during the examination, was unaware that the Plaintiff had an incomplete fusion, and could not even identify the level of the Plaintiff's surgery. In this case, Dr. Pinga's opinion is clearly inconsistent with other evidence of record and I am left to guess whether Dr. Pinga reviewed these records and findings and simply found them insignificant or whether Dr. Pinga failed to identify the problems shown in the x-rays and failed to assess the incomplete fusion.

In rejecting the opinion of the Plaintiff's treating physician, the ALJ did not state how much weight he gave to the opinion of Dr. Pinga, the consultative examiner, but he did state how much weight he was giving to the non-examining physician of record. Dr. James Moore, a non-examining state agency physician, reviewed the file and opined that the Plaintiff could perform a wide range of light work, only diminished by an inability to perform postural activities on more than a frequent basis (Tr. 196-203). The ALJ states: "I have considered this opinion as expert medical opinion. I find this opinion evidence well supported and have assigned it considerable weight in my residual functional capacity analysis" (Tr. 18).

However, a review of that opinion reveals that it is not based on substantial evidence. Section A.6. of the form that Dr. Moore completed states: "Explain how and why the evidence supports your conclusions in items 1 through 5. Cite the specific facts upon which your considerations are based." Dr. Moore's complete response to that question is as follows:

> CL HAD DISCECTOMY L2 AND FUSION '98. 6 MO LATER THE HARDWARE WAS REMOVED. EPIDURALS OF SOME BENEFIT. . TAKES MEDS FOR PARTIAL RELIEF. FLEXES 80*. L SLR+. 5/5 IN BUE & BLE. DOES WALKS NORMALLY.
>
> MACE SED. PARTIALLY CREDIBLE TO A LIGHT LEVEL.

Tr. 198 (capitalization and errors in original).

Dr. Moore's response in Section A.6. shows that he cited the wrong lumbar level of the surgery. He cites no results from any objective tests. While he refers to evidence back to 1998, it appears that he only reviewed the "History of Present Illness" section of the consultative examination, as all of the older "evidence" Dr. Moore purports to have reviewed is found in the Plaintiff's description of his illness as recited to Dr. Pinga (Tr. 188-189). In fact, as Plaintiff argues, *all* of the "evidence" Dr. Moore cites is contained in the narrative portion of Dr. Pinga's report. He never cites the x-rays taken in Dr. Pinga's office, nor does he ever mention the fact that the Plaintiff has an incomplete fusion. On its face, it is clear that Dr. Moore relied heavily on the report of Dr. Pinga, an examination flawed by the fact that Dr. Pinga's report does not mention the findings of the x-rays that were ordered by the Defendant as part of the consultative examination or did not comment on them. In any event, since there is no mention of the incomplete fusion by Dr. Moore, there is no way to know if that was considered by him.

An administrative decision must be supported by substantial evidence.  Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938)).  I cannot recommend accepting the opinion from a non-examining state agency physician who based his opinion on the opinion of a consulting physician who did not correctly identify the level of Plaintiff's surgery and did not discuss any review of the x-rays taken in his office, and failed to note that the Plaintiff has an incomplete fusion or discuss the effect of this lack of fusion.  I do not find the decision, based on those opinions, to be based on substantial evidence.

The Commissioner's decision can be reversed and remanded for an award of benefits in only very limited circumstances.  In cases where there is no unresolved, essential issue, the Commissioner's decision denying benefits can be reversed and benefits awarded if proof of disability is overwhelming or proof of disability is strong and evidence to the contrary is lacking. *Faucher v. Secretary of Health and Human Servs.,* 17 F.3d 171, 176 (6th Cir 1994); *Mowery v. Heckler,* 771 F. 2d 966, 973 (6th Cir. 1985).  In the instant case there are medical opinions which contradict the treating physician although they appear to contain errors.  Further the ALJ articulated other bases for rejecting the treating physician's conclusion including inconsistency of Plaintiff's testimony and inconsistencies in the record about activity reported by Plaintiff.  The evidence of disability is neither overwhelming nor is proof of disability strong with no evidence to the contrary.   It is the ALJ who is to weigh the evidence, not the court, so there are essential issues that remain which must be addressed by the ALJ and thus reversal and an award of benefits is not appropriate.

I do not make a finding that Plaintiff is disabled.  In many respects the decision of the ALJ appears well supported.  The ALJ's evaluation of the inconsistent testimony of Plaintiff, the inconsistency of Plaintiff's level of reported activities and Plaintiff's contradictory statements found in the record all give support to the conclusion of the ALJ.  The only question which appears unanswered is whether the incomplete fusion was a legitimate reason for his treating physician, an expert in the field of orthopaedic surgery, to conclude he was legitimately restricted to such a degree that he is precluded from any employment.  As Plaintiff argues, Dr. Scott Hodges, the treating orthopedic surgeon, is a specialist in Orthopaedics, recognized by The American Osteopathic Board of Orthopaedic Surgeons.  20 C.F.R. § 404.1527(d)(5) states that in evaluating opinion evidence, "We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." His opinion is therefore entitled to more weight based on his specialty. As stated above, I cannot find substantial evidence to support the decision when it is based in part on opinions by a consultative physician who refers to the wrong location for the surgery and on a state agency physician whose opinion also appears to rely heavily on the consultative physician especially in light of the fact that neither opinion addresses the question or even mentions the incomplete fusion.  Specifically I recommend that on remand the Commissioner be directed to obtain an additional consultative examination and a further review by a state agency physician to specifically address the question of whether the incomplete fusion does or does not support the assessment of Dr. Hodges. I further recommend that on remand either party be allowed to obtain further clarification from Dr. Hodges as to the basis of his disabling opinion.

## Conclusion

For the reasons stated herein, I conclude there is substantial evidence to support the decision of the Commissioner in denying Plaintiff Disability and Disability Insurance Benefits under Title II and I therefore RECOMMEND that portion of the Commissioner's decision be AFFIRMED. For the reasons stated herein, I further RECOMMEND the Commissioner's decision denying Supplemental Security Income benefits under Title XVI be REVERSED and the case REMANDED pursuant to Sentence Four of 42 U.S.C. § 405(g) for further proceedings consistent with this Report and Recommendation.

I further RECOMMEND the defendant's Motion for Summary Judgment (Doc. 22) be GRANTED in part and DENIED in part; and the plaintiff's Motion for Judgment on the Pleadings (Doc. 18) be GRANTED in part and DENIED in Part[1].

Dated: January 28, 2008        s/William B. Mitchell Carter

                                     UNITED STATES MAGISTRATE JUDGE

---

[1] Any objections to this Report and Recommendation must be served and filed within ten (10 days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).